UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CEnergy-GLENMORE WIND
FARM #1, LLC,

    Plaintiff,

 v.                  Case No. 12-C-1166

TOWN OF GLENMORE,

    Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

   Plaintiff CEnergy-Glenmore Wind Farm #1, LLC (CEnergy) filed this action against Defendant Town of Glenmore under 42 U.S.C. § 1983 alleging that the Town violated its right to substantive due process when it unreasonably delayed issuance of the building permits CEnergy needed to construct seven wind turbines. As a result of the delay, CEnergy lost a lucrative long-term contract with the power company that was going to purchase the energy its wind turbines would have generated. CEnergy's complaint also asserts a state law claim against the Town for a breach of duty of good faith and fair dealing. The case is before the court on the Town's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. More specifically, the Town contends that CEnergy's due process claim is not ripe for review because CEnergy either has or had state law remedies which it failed to exhaust. At the court's invitation, the parties also addressed the question of whether the complaint states a substantive due process claim. For the reasons stated in this opinion, the Town's motion will be granted.

# FACTS

The allegations of the complaint, which are accepted as true for purposes of deciding a motion to dismiss, *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001), provide the factual basis for the court's analysis. According to the complaint, a company called Prelude, LLC, the assets of which CEnergy later purchased, contracted with Dennis and Mary Zirbel and Michael and Sandra Zirbel (the Zirbels) to build wind turbines on land they own in the Town of Glenmore, located south of Green Bay. The Zirbels assigned Prelude the property rights it needed for the purpose of developing the project. (Compl. ¶ 11.) Prelude obtained a conditional use permit (CUP) from the Town on September 10, 2007, which allowed for the development of seven wind turbines on the Zirbels' property. (¶ 12.) After obtaining the CUP, Prelude executed a Power Purchase Agreement (PPA) with Wisconsin Public Service Corp (WPS) on August 5, 2009. Under the PPA, WPS was obligated to purchase power generated by Prelude's wind turbines at a predetermined rate for a 20 year period. As a condition of the PPA, Prelude was required to obtain all required local permits to build the turbines on the Zirbels' property by March 1, 2011. (¶¶ 12, 17, 18.) It wasn't until August 2010, however, that Prelude was informed that the Town required separate building permits for each of the wind turbines authorized under the CUP. (¶ 20.) By that time or shortly thereafter, significant community opposition to the project had apparently developed, and the Town decided to stall issuance of the required building permits. (¶¶ 23-25.)

The complaint details Prelude's efforts to obtain the required building permits for the project. Prelude first attempted to apply for a building permit in September 2010; however, representatives from the Town advised Prelude that an application could not be accepted until the Town received more information about the development project. Prelude attempted to comply with

Town's request for additional information, but between September and December 2010, the Town continuously refused to accept or consider Prelude's application for a building permit. On December 14, 2010, Town Clerk Lana Ossman sent a letter to Prelude at the direction of Town Attorney Robert Gagan requesting additional information from Prelude. CEnergy, which by that time was in the process of purchasing Prelude's assets, including its rights in the wind turbine project, responded to Ossman's letter supplying the additional requested information and addressing other issues the Town had raised by December 31, 2010. According to the complaint, by the end of December, the Town had all the information it needed to issue the building permits. (¶ 24-35.)

Also by December 2010, CEnergy and Prelude had informed the Town that it was essential that the permits be issued before March 1, 2011, or the PPA with WPS would become unenforceable. Mark Dick, a representative of CEnergy, explained to Town Board Chair Don Kittel, Attorney Gagan, and Ossman that the building permits were needed by March 1, 2011, in order for its PPA to be enforceable. Dick also explained that without the PPA, under which WPS agreed to pay for the energy generated by the turbines at set rates, the wind farm project would not be feasible in light of changes in the energy market. In other words, the Town knew that if the building permits were not granted by March 1, 2011, the project would very likely founder. (¶¶ 29-31.)

CEnergy contacted the Town to ensure that the consideration of its application for the building permits would be considered at its next Board meeting in January 2011. At the January 2011 meeting, Attorney Gagan advised the Board and first disclosed to CEnergy that he could not comment on the information supplied by CEnergy and would need additional time to review it. Members of the town also attended the meeting and "created a clamor and loudly opposed the

3

project." (*Id.* ¶ 39.) Representatives from CEnergy and Prelude contacted the Town's representatives in order to inquire how the building permits could be obtained within the necessary time frame. CEnergy and Prelude also requested that Glenmore hold a special meeting, but these requests were denied. The Town reassured CEnergy that the issue of the building permits would be taken up in January or February. In addition, the Town did not request any additional information concerning the permits. (¶¶ 44-47.)

The issue of the building permits was not put on the agenda for the Town's February meeting. Instead, the Town informed CEnergy that Attorney Gagan still had not had time to review the information submitted. Again, members of the town appeared at the February meeting and loudly voiced their opposition to the wind farm project. The complaint describes the citizens who appeared at the Town meetings as "a mob" and alleges that they instilled a climate of concern and fear within the members of the Board and other town officials. (*Id.* ¶ 46.) Also during this period, Don Kittel received numerous threats to his physical safety should he approve the wind farm project. Neither CEnergy nor Prelude knew about these threats. Although the issue of the building permits was not raised in February, CEnergy continued to request special meetings before the March 1st deadline. These requests were also rebuffed. CEnergy alleges that at "this point in February 2011 there was no decision by the Town on the issue or the building permits and thus no legal claims to enforce the building permits, or force the grant or issuance of those permits, were available to CEnergy and were not ripe at that time." (*Id.* ¶ 47.)

On March 1, 2011, the Town finally allowed CEnergy to submit its application for the building permits and held a public meeting on March 7 to take up the issue of the permits. The Board stated that CEnergy had supplied all the necessary information to obtain a permit. The Board

4

initially voted to grant CEnergy's permit and adjourned the meeting. After its vote the town citizens in attendance became visibly angry and threatening, necessitating security to be contacted to control the crowd. The Board then re-opened the meeting, engaged in further discussion about the permits, and voted to rescind its decision granting the permits. (¶¶ 49-54.) Later a special meeting was held on March 16, 2011, where the Board voted to retract its earlier rescission of its decision to grant the permits. The end result was that CEnergy was granted the necessary building permits it needed to develop the wind farm project, but it was too late. WPS sent a letter to CEnergy on March 4, 2011, terminating the PPA due to CEnergy's failure to obtain the necessary building permits by the March 1st deadline. (¶¶ 58-60.)

CEnergy attempted to sell its rights in the wind farm project to another power company and, together with that company, attempted to convince WPS to honor the PPA in spite of the failure of the condition precedent or to renegotiate a new PPA. These efforts were not fruitful. (¶¶ 66-67.) In addition, even after the building permits were granted, the Town's building inspector informed CEnergy that he was forbidden from issuing the permits by Attorney Gagan. Attorney Gagan sent a letter to CEnergy that it was required to satisfy additional criteria before the permits could be issued. According to the complaint, Board Chair Kittel later stated to CEnergy representative Dick that the Town acted "improperly and without a basis to thwart CEnergy's project and that he was manipulated by the Town attorney and clerk to take actions to intentionally delay and deny consideration and issuance of building permits to CEnergy knowing that doing so would cause CEnergy to lose the project." (*Id.* ¶ 71.) CEnergy asserts that as a result of the Town's actions, it lost approximately $7,000,000 in profit that it would have generated under its contract with WPS. (*Id.* ¶ 17.)

5

## DISCUSSION

As noted above, the Town's motion seeks dismissal of CEnergy's substantive due process claim for lack of subject matter jurisdiction pursuant Rule 12(b)(1) on the ground that CEnergy's federal claim is not ripe for review. The Town's argument is predicated on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, which held that a claim by a landowner that a local government has either directly or indirectly taken his property without paying just compensation is not ripe until the landowner has first used the available state procedures for seeking just compensation. 473 U.S. 172, 195 (1985); *see also Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993) ("[A] landowner cannot complain that his constitutional right [to just compensation for a taking] has been denied until he exhausts his remedies for obtaining a compensation award or equivalent relief from the state."). Here, the Town argues, CEnergy's constitutional claim is not ripe because it failed to exhaust available state court remedies. The fact that CEnergy has labeled its claim as a substantive due process claim makes no difference, the Town contends, because "[l]abels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *River Park v. City of Highland Park*, 23 F.3d 164,167 (7th Cir.1994); *see also Forseth v. Village of Sussex*, 199 F.3d 363, 370 (7th Cir. 2000) (affirming district court's dismissal of landowner's substantive due process claim against Village for lack of jurisdiction for failure to pursue state court remedies). Based on *Williamson*, the Town contends, CEnergy's due process claim is not ripe and must therefore be dismissed.

It seems doubtful that lack of ripeness is the problem with CEnergy's claim. Ripeness, as the name implies, addresses "whether a dispute has yet matured to the point that warrants decision." 13B Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE § 3532, at 365 (2008).

"Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." *Wisconsin Right to Life State Political Action Committee v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011). "The basic rationale of the ripeness doctrine 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200 (1983) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "[T]he question of ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 201 (internal quotations omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

In this case it is clear that CEnergy's substantive due process claim does not rest upon contingent future events that may not occur as anticipated or at all. As a result of the Town's delay in issuing building permits for the wind turbines, CEnergy's lucrative contract with WPS, has been terminated. CEnergy's rights in the agreement have been lost. There is no state or local remedy available to CEnergy that it can use to recover its investment in the project or the profits it anticipated it would have received had the building permits been granted before March 1, 2011. CEnergy's claim is as ripe as it will ever be. What remains is the broader question the court asked the parties to address: namely, has CEnergy stated a substantive due process claim in the first place?

7

The law governing substantive due process remains confused. *See Tun v. Whitticker*, 398 F.3d 899, 900 (7th Cir. 2005) ("This case requires that we once again wade into the murky waters of that most amorphous of constitutional doctrines, substantive due process."). Though on its face, the Due Process Clause would seem to apply only to the "process," in particular the procedural protections, that a person must be afforded before government can deprive him or her of "life, liberty or property," U.S. Const., Amdt. XIV, § 1, the Supreme Court has long held that the Clause "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). However, substantive due process claims are "limited to violations of fundamental rights." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). This is because, "[a]s a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992).

In *County of Sacramento v. Lewis*, the Court held that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" 523 U.S. at 847. Although the Seventh Circuit has described *Lewis*'s "shocks the conscience" standard as "not a very illuminating expression," *Slade v. Board of School Directors of City of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012), it has applied the test to land use disputes such as this.

In *Bettendorf v. St. Croix County*, the court applied the shocks-the-conscience test in affirming the district court's dismissal of a landowner's substantive due process claim against the

8

County for rescinding the commercial zoning designation of a portion of his property. 631 F.3d 421 (7th Cir. 2011). In that case, the County had previously passed an ordinance re-zoning the property from agricultural-residential to commercial. The ordinance contained a condition, however, that upon the transfer of the property by the owner, or his death, the classification would revert to agricultural-residential. *Id.* at 423. The landowner sued in state court seeking a declaration that the condition was void. The circuit court found in the landowner's favor, but the Wisconsin Court of Appeals reversed, holding that the entire ordinance was void which caused the classification to revert to agricultural-residential. When the County rescinded the zoning ordinance in compliance with the court's judgment, the landowner commenced a federal action alleging an unconstitutional taking and violation of procedural and substantive due process. In affirming the district court's summary judgment dismissing the landowner's substantive due process claim, the court noted that "[a] government entity must have exercised its power without reasonable justification in a manner that 'shocks the conscience' in order for a plaintiff to recover on substantive due process grounds." *Id.* at 426 (citing *Tun*, 398 F.3d at 902). It concluded that, given the state court of appeals ruling, the "County's decision to revoke the commercial designation [could] hardly be considered conscious-shocking or arbitrary." *Id.*

The Third Circuit reached a similar conclusion applying the shocks-the-conscience test to a land used dispute in *Eichenlaub v. Township of Indiana*, 385 F.3d 274 (3d Cir. 2004). There officials were alleged to have applied subdivision requirements to the plaintiffs' property that were not applied to other parcels, pursued unannounced and unnecessary inspection and enforcement actions, delayed certain permits and approvals, improperly increased tax assessments, and maligned and muzzled the plaintiffs. *Id.* at 286. Noting that the complaints were typical of the kind of

9

disagreement that is frequent in planning disputes and that there was no allegation of corruption or self-dealing, the court affirmed the district court's conclusion that the "misconduct alleged here does not rise sufficiently above that at issue in a normal zoning dispute to pass the 'shocks the conscience test.'" *Id.*

Applying the shocks-the-conscience test here, CEnergy's claim fails. As in *Eichenlaub*, there is no allegation of corruption or self-dealing by the members of the Town Board. There is no allegation that the Board was bribed or that the members had a financial interest in killing CEnergy's contract. The Town's failure to act, according to the complaint, was motivated by community opposition to the wind farm development. It is hardly surprising, or shocking, that an elected Town Board would be responsive to its more vocal constituents. If inaction and delay on the part of government officers and representatives is enough to shock the judicial conscience, the sea of substantive due process claims would flood the courts beyond what even the most vociferous proponents of substantive due process could imagine.

The Seventh Circuit has also held in land use disputes that substantive due process violations may arise where a substantive constitutional right has been violated and state remedies are inadequate. *See Centres, Inc. v. Town of Brookfield*, 148 F.3d 699, 704 (7th Cir.1998) ("The case law of this circuit makes clear that, in order to state a substantive due process claim, a plaintiff must also allege that some other substantive constitutional right has been violated or that state remedies are inadequate." (citing *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990); *Polenz v. Parrott*, 883 F.2d 551, 558-59 (7th Cir.1989); *Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 958 (7th Cir.1988)). Though it seems more akin to procedural due process, this standard, like the shocks-the-conscience test, is also intended to "impose substantial burdens on the

10

plaintiff" so as to prevent federal courts from becoming "zoning boards of appeal." *Id.* (quoting *Polenz*, 883 F.2d at 558); *see also United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 402 (3d Cir.2003) (noting that "[a]pplication of the 'shocks the conscience' standard in this context also prevents us from being cast in the role of a 'zoning board of appeals.'" (citing *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982)).

CEnergy argues under this test that the Town's motion to dismiss should be denied because it has "no state law remedies available to it that would come close to achieving recovery of the several million dollars it lost in upfront investment and future profits." (ECF No. 14, at 8.) If the Town were a private actor, CEnergy contends, it would be able to sue in state court for tortious interference with its contract with WPS. CEnergy notes, however, that the Town is immune from such liability under state statute. (ECF No. 14 at 9 (citing Wis. Stat. § 893.80(4)).) *Certiorari* review pursuant to state law would not provide an adequate remedy, CEnergy contends, because at best it could only result in an order granting it a new hearing. And since the Town ultimately granted its application for the building permits, CEnergy contends, it has no basis for seeking *certiorari*. More importantly, CEnergy notes, it could not recover damages in an action for *certiorari*. The same is true of *mandamus*. Quoting *Menzel v. City of Milwaukee*, 32 Wis. 2d 266, 277, 145 N.W.2d 198 (1966), CEnergy notes that mandamus cannot be used to compel action "when the officer's duty is not clear and unequivocal and requires the exercise of the officer's discretion." (ECF No. 14 at 13.) And like *certiorari*, mandamus is not a remedy for recovery of damages. Despite the blunt language of *River Park*, CEnergy notes, no Seventh Circuit case holds that a landowner may not bring his claim to federal court if he has no adequate state law remedies "for

11

compensation or equivalent relief." (*Id.* at 9.) Because it has no available remedy here, CEnergy argues that this case is similar to *Polenz v. Parrott*.

In *Polenz*, the plaintiffs successfully sued an alderman and electrical inspector under § 1983 for allegedly depriving them of their right to a fair hearing on their applications for a tavern license and causing them to be arbitrarily and unreasonably denied an occupancy permit for their property. On appeal, the Seventh Circuit held that the plaintiffs had no constitutionally protected liberty or property interest in a liquor license and reversed that portion of the trial court's judgment awarding damages attributable to that part of the claim. 883 F.3d at 554-56. As to the balance of their claim, the court found that the plaintiffs did have a property interest in an occupancy permit based on their undisputed claim that they were unable to occupy their premises for any purpose for a period of almost two years as a result of the defendants' conduct. *Id.* at 557. Moreover, the defendants had not appealed the jury's finding that the denial of the occupancy permit was arbitrary and unreasonable. *Id.* at 558. But that was not enough to establish a violation of substantive due process. To prevail on a substantive due process claim in the context of land use regulations, the court held, "in addition to showing that the decision was arbitrary and irrational, the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies." *Id.* at 558-59 (citing *Kauth v. Hartford Insurance Co.*, 852 F.2d 951, 956-58 (7th Cir.1988)). Because there had been no determination by the trial court as to the adequacy of the state remedies, the court remanded this aspect of the case for further proceedings. *Id.* at 559. Thus, as CEnergy views the law, its substantive due process claim survives. A jury could find that the actions of the Town Board in delaying issuance of a building permit were arbitrary and capricious and, because there is no state

12

law remedy that it could use to recover its investment and lost profits, it may sue the Town for a violation of its right to substantive due process.

But the question is not whether CEnergy *now* has available state remedies that would allow it to recover the value of its investment and the profits it lost as a result of the cancellation of its contract. The question is whether there were state remedies that were available before CEnergy suffered its loss:

> The cases hold that the federal claim is unripe until state remedies are exhausted. But a claimant cannot be permitted to let the time for seeking a state remedy pass without doing anything to obtain it and then proceed in federal court on the basis that no state remedies are open. As recognized in other areas where exhaustion of remedies is required, an unexcused failure to exhaust forfeits the plaintiff's rights, with various exceptions not applicable here.

*Gamble*, 5 F.3d at 286.

Here, it is clear that there were state remedies available to CEnergy before the deadline expired under its contract with WPS. Under the Town's Zoning Ordinance, applications for building permits were required to be made in writing to the Town Zoning Administrator. Town of Glenmore Zoning Ordinance, § 24, ¶ E(2). (ECF No. 20-1, at 8.) The provision states: "The Zoning Administrator shall issue the building permit if the proposed building complies with all of the provisions of this ordinance." *Id.* In an apparent attempt to avoid unreasonable delays, the ordinance further states:

> The building permit shall be granted or denied within a ten (10) day period from the date the application is received by the Zoning Administrator. The failure of the Zoning Administrator to issue a permit within said ten day period shall be construed as a denial of the building permit, thereby beginning the tolling [sic] of the thirty (30) day period in which the applicant can appeal to the Board of Appeals for the issuance of said building permit.

*Id.*

13

Prelude, CEnergy's predecessor, obtained the CUP allowing it to develop the wind farm on September 10, 2007, and it entered into the PPA with WPS requiring that it obtain all necessary permits by March 1, 2011, on August 5, 2009. At any time thereafter, CEnergy could have simply filed its application for a building permit with the Zoning Administrator and, if the Zoning Administrator failed to issue it within ten days, appeal the deemed denial to the Board of Appeals. Under the Zoning Ordinance, the failure of the Board of Appeals to issue a decision within sixty days was also deemed a denial. *Id.* ¶ C(10) (ECF No. 20-1 at 7.) At that point, assuming neither the Zoning Administrator nor the Board of Appeals had acted, CEnergy could have filed an action for a writ of mandamus in state court. *See Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 540 N.W.2d 189 (1995) (noting that mandamus is available to compel municipality to issue building permit where proposed construction and application for permit are in full compliance with zoning and building code).

CEnergy alleges in its complaint that it was not advised it would need a building permit until August of 2010. (Compl. ¶ 20.) Of course, ignorance of the law does not excuse a failure to comply with procedural requirements. *Albino v. Baca*, 697 F.3d 1023, 1036-37 (9th Cir. 2012); *see also Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("[I]gnorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing."). But even if the fact that CEnergy, or its predecessor, did not know it needed a building permit was an excuse, there was still sufficient time for recourse to state law remedies when Prelude learned of the requirement for a building permit in August 2010.

CEnergy also alleges in conclusory fashion that the Town refused to allow Prelude to apply for a building permit. (Compl. ¶¶ 21-24.) But the Town's Zoning Ordinance does not require an

14

applicant to get the Town's approval before applying for a building permit. It simply says that applications for building permits are to be made in writing to the Zoning Administrator by the landowner or his/her authorized agent. (ECF No. 20-1 at 8.) CEnergy does not claim that it attempted to file an application with the Zoning Administrator and he refused to accept it. At oral argument, counsel conceded that in fact CEnergy had adopted a cooperative approach with the Town in the belief that this offered it the best opportunity to meet its deadline. The decision to adopt such an approach may have been reasonable, but the fact that it failed does not mean CEnergy had no state law remedy available to obtain the relief to which it claims it was entitled.

If CEnergy, or Prelude, had forced the issue and applied for a permit immediately after it received the CUP, or at least when it became apparent that the political winds were changing direction, it may have gotten a state court to compel the Town to issue its permits and avoided the loss for which it now seeks compensation. The fact that it might not have succeeded in time for CEnergy to meet its contractual deadline anyhow is of no moment. Due process requires only a state court remedy, not a guaranteed win by the applicant's contractual deadline. The Court's conclusion in *River Park* is equally applicable here:

> Illinois provided River Park with ample means to contest the runaround it was receiving at the hands of Highland Park. If because the City refused to make a formal decision the standard means were cut off, the common law writ of certiorari remained. The opportunity to apply for that writ is enough, we have held, even when rights under the first amendment are at stake. *Graff v. Chicago*, 9 F.3d 1309, 1323–25 (7th Cir.1993) (en banc). It is assuredly enough in a zoning case. River Park insists that state law entitled it to an R4 zoning; if that is so, state litigation would have fully protected its rights. Instead of asking for relief from the state courts, River Park went along with the political process until it was too late. It lost the political fight. Federal litigation is not a repêchage round for losers of earlier contests, or for those who overslept and missed the starters' gun.

23 F.3d at 167. It thus follows that the Town's motion to dismiss should be granted. CEnergy lost

15

whatever rights it may have had in this matter by failing to pursue its state judicial remedies. *Gamble*, 5 F.3d at 288. It has no substantive due process claim.

## CONCLUSION

In sum, whether one applies *Lewis*' shocks-the-conscience test or *Polenz*' absence-of-state-remedies test, the result is the same. CEnergy's complaint fails to state a substantive due process claim. Absent a federal claim, the usual and preferred course is to dismiss the supplemental state law claims without prejudice, especially when there has been almost no discovery or pretrial proceedings. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997). Accordingly and for the reasons set forth above, the Town's motion to dismiss is granted. CEnergy's substantive due process claim is dismissed with prejudice, and the state law claims are dismissed without prejudice. The Clerk is directed to enter judgment in favor of the Town and against CEnergy forthwith.

**SO ORDERED** this   3rd   day of July, 2013.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court